# In the United States Court of Federal Claims

| | |
|---|---|
| VETERAN ELEVATED SOLUTIONS, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> ARMSTRONG ELEVATOR COMPANY, <br><br> *Defendant-Intervenor.* | No. 24-1882[1] <br> (Filed: August 1, 2025) <br> Filed under seal: July 24, 2025 <br> Reissued: August 1, 2025 |

*Matthew Thomas Schoonover, John M. Mattox II, Timothy J. Laughlin,* and *Haley M. Sirokman,* Schoonover & Moriarty LLC, Olathe, KS, for Plaintiff.

*Kelly Palamar* and *Vincent D. Phillips, Jr.*, Civil Division, United States Department of Justice, Washington, D.C., *Caitlin Kelly*, Small Business Administration, Washington, D.C., and *Karlyn H. Boler*, Department of Veterans Affairs, Washington, D.C., for Defendant.

*Jonathan Perrone, William Selinsky,* and *Timothy Turner*, Whitcomb, Selinsky, P.C., Lakewood, CO, for Defendant-Intervenor.

**OPINION AND ORDER**

**LERNER,** *Judge*.

      This is a post-award bid protest. Plaintiff, Veteran Elevated Solutions, LLC ("VES") challenges Defendant, the Department of Veterans Affairs' ("VA's" or "the Agency's") decision to award a contract to Defendant-Intervenor, Armstrong Elevator Company ("AEC"). Second Am. Compl. at 1, ECF No. 37. The Agency sought a Service-Disabled Veteran-Owned Small Business ("SDVOSB") to upgrade elevators at a VA hospital in Richmond, Virginia. *Id.* at 6; *see also* Tab 2 at AR 10; Tab 5a at AR 28.

      After the Agency's award decision, VES brought a claim before the Small Business Administration's ("SBA's") Office of Hearings and Appeals ("OHA"). Tab 18b at AR 633–91.

---

[1] In accordance with the protective order in this case, this Opinion was initially filed under seal on July 24, 2025. ECF No. 60. The parties agreed that no redactions were necessary. ECF No. 61.

There, VES alleged Mr. Roy Armstrong, AEC's service-disabled veteran owner, did not adequately control AEC for it to qualify as a SDVOSB when it submitted its bid on April 29, 2024. *Id.* OHA denied VES' protest. *See* Tab 27.2.

VES then brought this action, claiming OHA's denial was improper because it primarily relied on outdated evidence from 2021 and earlier. Second Am. Compl. at 1–2. After Defendant filed the Administrative Record, VES added a claim arguing the VA erred in awarding the contract to AEC because its submission was materially deficient. *Id*. at 17–18. Specifically, VES asserts the VA improperly waived material requirements on subcontractors when evaluating AEC's proposal. *Id.*

Before the Court are the parties' respective Motions for Judgment on the Administrative Record. Pl.'s Mot. for J. on the Admin R., ECF No. 38; Pl.'s Mem. in Support of Mot. for J. on the Admin. R. (hereinafter "Pl.'s Mem."), ECF No. 38-1; Def.'s Cross-Mot. for J. on the Admin. R. (hereinafter "Def.'s Mot."), ECF No. 42; Def.-Intervenor's Cross-Mot. for J. on the Admin. R. (hereinafter "Def.-Intervenor's Mot."), ECF No. 43. Having considered the parties' arguments and the Administrative Record, and following oral argument, the Court finds the VA did not err in evaluating AEC's proposal. However, the record is unclear whether OHA's decision was properly supported by substantial evidence. After oral argument Defendant filed a Consent Motion for Voluntary Remand, seeking a remand to OHA for it to reconsider its decision regarding AEC's SDVOSB status. Def.'s Consent Mot. for Voluntary Remand (hereinafter "Remand Mot."), ECF No. 59.

For the reasons below, Plaintiff's Motion for Judgment on the Administrative Record is **GRANTED-in-PART** and **DENIED-in-PART**. Defendant's and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record are **GRANTED-in-PART** and **DENIED-in-PART**. Defendant's Consent Motion for Voluntary Remand is **GRANTED**. The Court **REMANDS** this case to OHA for **45 days** for a reevaluation of AEC's SDVOSB eligibility consistent with this Opinion. The VA is **ORDERED** to stay contract performance pending OHA's reevaluation.

## I. Factual Findings and Background

### A. The Solicitation

On March 26, 2024, the VA issued a Request for Proposal ("RFP" or "Solicitation") for elevator upgrades at the Central VA Health Care System in Richmond, Virginia. Tab 5a at AR 28. The VA designated the Solicitation as a "100% Total [SDVOSB] Set-Aside" and contractors had to be "certified in the SBA Veteran Small Business Certification (VetCert) page to be eligible." *Id.* The VA would award the contract to the "responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered." *Id.* at AR 42.

"Offerors [were] required to meet all solicitation requirements, including [the] instructions, the terms and conditions, representations and certifications, and technical and past performance requirements." *Id.* at AR 35. The Solicitation instructed that "[f]ailure to meet a

2

requirement may result in an offer being ineligible for award." *Id.* It also included attachments providing additional instructions and templates for required forms. *See* Tabs 5b–5f.

On April 10, 2024, prospective offerors participated in a site visit of the VA facility. *See* Tab 8a at AR 233. The VA responded to questions raised during the site visit via Amendment 0003 to the Solicitation. *Id.* at AR 233–240. The first inquiry, regarding fire alarm system testing, directed bidders to Attachment A of the RFP—Combined Specifications—which instructed them to "[c]oordinate any Emergency Recall Operations with the Facility Fire Alarm System." *Id.* at AR 234; Tab 5b at AR 158.

### 1. General Terms

The Solicitation required bidders to submit their proposals in three parts: Technical Capability, Past Performance, and Price. Tab 5a at AR 35. The VA divided Technical Capability into six "sub-factors": 1) General Qualifications, 2) Corporate Experience, 3) Key Personnel Qualifications, 4) Contractor Responsibility Items, 5) Subcontractor List and Qualifications, and 6) Project Management Plan. *Id.* at AR 38–40. The Agency evaluated the technical sub-factors using the following "Combined Technical/Risk Ratings":

| Adjectival Rating | Description |
|---|---|
| Outstanding | Proposal meets requirements and indicates an exceptional approach and understanding of the requirements. Strengths far outweigh any weaknesses. Risk of unsuccessful performance is very low. |
| Good | Proposal meets requirements and indicates a thorough approach and understanding of the requirements. Proposal contains strengths which outweigh any weaknesses. Risk of unsuccessful performance is low. |
| Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements. Strengths and weaknesses are offsetting or will have little or no impact on contract performance. Risk of unsuccessful performance is no worse than moderate. |
| Marginal | Proposal does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the requirements. The proposal has one or more weaknesses which are not offset by strengths. Risk of unsuccessful performance is high. |
| Unacceptable | Proposal does not meet requirements and contains one or more deficiencies. Proposal is not awardable. |

*Id.* at AR 38.

As part of its evaluation, the VA assessed all six sub-factors and assigned "an overall technical proposal rating." *Id.* To remain in consideration, a proposal needed to earn an overall technical rating of at least "Acceptable." *Id.*

### 2. Subcontractor Sub-factor

The VA evaluated each sub-factor according to the Solicitation's requirements. *Id.* at AR 38–40. For sub-factor 5, Subcontractor List and Qualifications, the Agency used the following criteria:

> **CRITERIA and SUBMISSION REQUIREMENTS:** Provide a list of subcontractors intended for use on the project, including the firm(s) (1.) entity name and address (2.) point of contact information (name, email and phone number), (3.) role as a joint-venture partner or subcontractor, (4.) planned role in the project, (5.) experience in the discipline(s) to be performed (including the number of years corporate experience in the discipline[)], (6.) the type/nature of the agreement (i.e. contract) that the prime contractor has with the subcontractor, and (7.) ability of the subcontractor to provide adequate resources to successfully complete the project. Information provided will be evaluated to ensure qualifications meet any minimum qualification requirements outlined in the Specifications, as well as to gauge the overall suitability of the subcontractor to the work being performed, and the business arrangement between the subcontractor and prime offeror. The offeror shall review the Specifications to determine all qualifications and requirements.

*Id.* at AR 39–40. The criteria instructed offerors to provide detailed information about the subcontractors they intended to use on the project, including each subcontractor's experience and the nature of its business relationship with the prime contractor. *Id.*

Attachment A—Combined Specifications—clarified certain services would not be the awardee's or its subcontractor's responsibility. *See* Tab 5b at AR 158, AR 178. It stated the VA's Contracting Officer, not the contractor or any subcontractor, would be responsible for "obtain[ing] the services of a third party" Qualified Elevator Inspector ("QEI"). *Id.* at AR 178. The attachment also explained offerors were not required to provide a fire alarm contractor. *Id.* at AR 158. And, as noted, during the April site visit and in Amendment 0003, the VA instructed the future awardee to coordinate with the facility's designated fire alarm contractor for testing. *Id.*; Tab 8a at AR 233–34.

### B. Initial Award Decision

Three offerors submitted proposals for the contract. *See* Tab 9 at AR 263–72. AEC received an overall technical rating of "Good," VES received an overall technical rating of "Acceptable," and the third bidder received a rating of "Unacceptable." *Id.* at AR 271. The VA awarded the elevator contract to AEC on July 30, 2024. Tab 13 at AR 463.

Both AEC and VES received "Acceptable" ratings under the subcontractor sub-factor. Tab 9 at AR 267. AEC's proposal included the following in response to the subcontractor sub-factor:

> Armstrong Elevator is a full-service Contractor and will provide almost all the above work with our own employees. *The exceptions will be Fire Alarm programming*. Subcontractors for these items will be subjected to the same strict

4

>  engineering, submittal reviews and onsite safety procedures detailed above. They
>  will be required to provide designated Competent Personnel for Quality Control
>  and Safety.

Tab 28a at AR 1292 (emphasis added). The VA noted that although AEC "did not provide any details about which subcontractor they would provide[,] [a Request for Information] was answered that the VA has a fire alarm contractor in house." Tab 9 at AR 267. The VA listed AEC's "[l]imited need for subcontractor" as a strength but flagged its failure to "provide subcontractor information" as a weakness. *Id.*

In its proposal, VES listed one electrical subcontractor under sub-factor 5. Tab 31a at AR 1468–69. It noted the subcontractor's point of contact, telephone number, email, project role, and industry experience in both table and paragraph format. *Id.* VES did not provide an address. *Id.* The VA awarded a strength to VES' proposal, noting the designated electrical subcontractor would only perform ten percent of the work. Tab 9 at AR 267. However, the VA identified a weakness in the lack of "details proving [the] subcontractor[']s experience." *Id.* The VA rated VES' sub-factor as "Acceptable." *Id.*

### C. SDVOSB Status Protest

VES protested AEC's SDVOSB eligibility before the VA on August 6, 2024. *See* Tab 16 at AR 488–546. On August 21, 2024, the VA referred the SDVOSB status protest to OHA. Tab 17 at AR 547–48. The SBA's OHA adjudicates SDVOSB status protests pursuant to 13 C.F.R. §§ 134.1001–1013.

An eligible SDVOSB must be at least fifty-one percent owned and fully controlled by one or more service-disabled veterans. *Id.* §§ 128.202–203. The "control" requirement means the service-disabled veteran must direct "both the long-term decision-making and the day-to-day operations" of the entity. *Id.* § 128.203(a). Further, the service-disabled veteran owner "may not engage in outside employment that prevent[s] [him or her] from devoting the time and attention to the concern necessary to control its management and daily business operations." *Id.* § 128.203(i)(1). And if the service-disabled veteran "devotes fewer hours to the business than its normal hours of operation, SBA will assume that the qualifying veteran does not control the business concern, unless the concern demonstrates that the qualifying veteran has ultimate managerial and supervisory control over both the long-term decision making and day-to-day management" of the entity. *Id.* § 128.203(i)(2).

A reviewing OHA judge must determine a company's SDVOSB eligibility "as of the date of its initial offer or response." *Id.* § 134.1003(e). The burden is on the "protested concern"—AEC in this case—to "prov[e] its eligibility, by a preponderance of the evidence." *Id.* § 134.1010.

The SBA's Director for the Office of Government Contracting must "deliver to OHA the entire case file relating to the protested concern's inclusion in the certification database" and must "certify and authenticate that the case file, to the best of his/her knowledge, is a true and correct copy of the case file." 13 C.F.R. § 134.1007(c). Accordingly, the SBA provided OHA

5

with the case file used to certify AEC as a Veteran-Owned Small Business ("VOSB") in 2022. Tab 21. All the exhibits in the case file pre-date AEC's 2022 VOSB certification. *See* Tab 21b. Mr. Armstrong did not receive a service-connected disability determination until 2023, at which time the SBA amended AEC's certification from a VOSB to an SDVOSB. *See* Tab 20a; Tab 27.2 at AR 1251.

Before OHA, VES alleged AEC was not sufficiently controlled by a service-disabled veteran when it submitted its bid on April 29, 2024. Tab 16 at AR 488–92; *see also* 13 C.F.R. §§ 128.201–203. VES asserted Mr. Armstrong did not "unconditionally contro[l]" the company and did not manage its day-to-day operations due to his involvement in several outside businesses and his limited time spent in Florida. Tab 16 at AR 489–91. VES cited Mr. Armstrong's roles in the Oregon-based companies Potcake Cellars and Potcake Aviation, as well as his position as manager of McMinnville Municipal Airport in Oregon, as commitments which prevented him from devoting the necessary time to AEC at its main office in Largo, Florida. *Id.* at AR 491. In total, VES attached seventeen exhibits to its status protest. *Id.* at AR 488–546.

In its response, AEC denied VES' allegations, asserting Mr. Armstrong maintained the necessary control of AEC. Tab 20.2 at AR 710–15. Regarding Potcake Cellars, AEC stated the business was operated solely by Mr. Armstrong's wife, Sondra Armstrong, who "has complete control of the company, with little input from her husband." *Id.* at AR 712. And concerning Potcake Aviation, AEC explained Mr. Armstrong founded the company to "get to remote AEC worksites across the country," and his work at the company did not interfere with his management of AEC. *Id.* at AR 713. AEC also asserted Mr. Armstrong delegated his duties at McMinnville Municipal Airport to Mr. Rob Dehner. *Id.*

The response cited attachments attesting to Mr. Armstrong's control of the company. *See id.* at AR 710–15, 718–48. Attachments included: 1) Mr. Armstrong's 2023 VA disability letter; 2) affidavits signed by Mr. Armstrong's accountant and bond agents attesting to Mr. Armstrong's control of AEC; 3) meeting minutes concerning a separate contract listing Mr. Armstrong as AEC's owner; 4) a signed affidavit from an Elevator Modernization Program Manager who worked with Mr. Armstrong and AEC on previous projects attesting to Mr. Armstrong's control of AEC; 5) Mr. Armstrong's Florida driver's license; 6) a signed affidavit from Potcake Cellars' General Manager, Ms. Megan Miller, attesting to Mr. Armstrong's limited role in the company; 7) the McMinnville Municipal Code for Airport General Managers; and 8) a signed affidavit from Mr. Dehner, attesting Mr. Armstrong delegated all airport management duties at McMinnville Municipal Airport. Tabs 20a–20h.

VES then supplemented its protest, arguing AEC "failed to provide any <u>direct</u> evidence of its eligibility" as an SDVOSB. Tab 24 at AR 1233; *see also* 13 C.F.R. § 134.1007(e). It claimed AEC's response "consist[ed] solely of attorney argument and statements" and failed to include a sworn statement from Mr. Armstrong attesting to his "day-to-day" control of the company. *Id.* The supplement also alleged "Armstrong Elevator has endeavored, since this protest was filed, to hide unfavorable information," suggesting Mr. Armstrong's involvement in

6

Potcake Cellars was removed from the company's website after VES' protest. *Id.* at AR 1235. VES did not submit additional evidence with its supplement. *See id.*

In response, AEC refuted VES' claim that Mr. Armstrong failed to provide a signed statement, noting he signed AEC's response "under penalty of perjury." Tab 25 at AR 1240. AEC also addressed VES' repeated claims concerning Mr. Armstrong's alleged involvement in numerous other businesses. *Id.* It asserted "Mr. Armstrong devotes a full-time schedule to managing AEC during its normal business hours. . . . [H]e manages the company's work remotely—by phone, email, project management tools, video calls, and direct messages—or by traveling by company jet to remote project sites." *Id.*

OHA found AEC was an SDVOSB on October 28, 2024. *See* Tab 27.2. In his decision, the OHA Judge first outlined the background of the case and both parties' arguments, summarizing the Solicitation, VES' status protest, AEC's response, VES' supplemental protest, and AEC's response to VES' supplemental protest. *Id.* at AR 1248–51. He then reviewed the case file submitted to the VA's Center for Verification and Evaluation ("CVE") for AEC's 2022 VOSB determination. *Id.* at AR 1251. He referenced multiple case file exhibits dated in or around 2021 regarding AEC's 2022 VOSB certification. *See id.* He also cited a CVE December 2021 inquiry concerning Mr. Armstrong's other employment. *Id.* And he stated: "On April 12, 2023 . . . VA sent Mr. Armstrong a letter confirming his service-connected disability, and SBA then changed AEC's status from VOSB to SDVOSB." *Id.*

After reviewing the parties' arguments, the 2022 case file, and the 2023 disability letter, the OHA Judge proceeded to his discussion and analysis. *Id.* at AR 1252–53. He noted the burden of proof requiring AEC to "prov[e] its eligibility by a preponderance of the evidence" and confirmed the date to determine SDVOSB eligibility "as of the date of its initial offer or response . . . April 29, 2024." *Id.* at 1252. In his three-paragraph analysis, the OHA Judge cited previous sections of the opinion outlining VES' petition, AEC's response, and the supplemental petition and response. *Id.* at AR 1252–53. He also noted that while "SBA regulations previously established a rebuttable presumption that a service-disabled veteran does not control a concern if that individual is not located within a reasonable commute to firm's headquarters . . . . SBA eliminated this presumption" on January 1, 2023. *Id.* at AR 1253 (internal quotation marks omitted).

The OHA Judge did not cite any of the evidence VES or AEC provided other than the 2023 letter confirming Mr. Armstrong's service-connected disability. *See generally id.* Nor did he mention the April 29, 2024 eligibility date in his analysis or conclusion. *Id.* at AR 1252–53. He concluded, "AEC has proven its eligibility as an SDVOSB by a preponderance of the evidence and has persuasively shown that Mr. Armstrong devotes full-time to AEC without conflicting outside employment or other commitments." *Id.* at AR 1253.

### D. Initial Proceedings in this Court and Corrective Action

VES filed a Complaint in this Court on November 15, 2024, alleging OHA's decision was arbitrary and capricious. *See* Compl., ECF No. 1. Following the filing of the Administrative Record, VES amended its Complaint asserting that in addition to challenging the

OHA decision, the VA's evaluation of AEC's proposal was arbitrary and capricious because AEC "failed to provide material information required by the Solicitation." Am. Compl. at 15–16, ECF No. 23-1; *see also* ECF No. 15.

On January 24, 2025, the VA announced it would take corrective action in response to VES' bid protest. Joint Status Report, ECF No. 29. The Agency stated it would "reevaluat[e] proposals and document[] a new award decision." *Id.* at 2. OHA was not involved in the corrective action. *See id.* The Court stayed proceedings pending the results of the VA's corrective action. *See* ECF No. 30.

### E. New Award Decision

On March 24, 2025, the VA completed its corrective action and notified the Court it would maintain the contract award to AEC. *See* Notice of Corrective Action, ECF No. 31. After its reevaluation, the VA again assessed AEC's overall technical rating as "Good" and VES' as "Acceptable." Tab 35 at AR 1651.

Under sub-factor 5, Subcontractor List and Qualifications, the VA rated AEC's proposal as "Acceptable," noting its strength in "not need[ing] any subcontractors." *Id.* at AR 1649. Unlike the initial evaluation, the reevaluation did not identify any weaknesses or deficiencies in AEC's subcontractor submission. *Compare* Tab 9 at AR 268 *with* Tab 35 at AR 1649. VES similarly received an "Acceptable" rating under sub-factor 5 in its reevaluation. Tab 35 at AR 1649. The VA determined VES' "[s]ubcontractor should have adequate resources to successfully complete the project," but also noted two weaknesses: 1) it was "[u]nclear if the protégé [would] be responsible for more than administrative and ministerial functions" and 2) the "[a]ddress for subcontractor entity [was] not provided." *Id.*

The reevaluation also identified a weakness in AEC's sub-factor 6, Project Management Plan, submission: "[o]fferor mentioned the use of offeror's QEI, the Solicitation states that the contractor is not responsible for the QEI." *Compare* Tab 9 at AR 268 *with* Tab 35 at AR 1650. The Agency found a similar weakness in VES' proposal noting: "[o]fferor mentioned the use of in-house QEI, the solicitation states that the contractor is not responsible for the QEI." Tab 35 at AR 1650.

## II. Procedural Posture

Plaintiff filed both a Second Amended Complaint and a Motion for Judgment on the Administrative Record on April 30, 2025. Second Am. Compl.; Pl.'s Mem. On May 21, 2025, Defendant and Defendant-Intervenor filed their respective Cross-Motions for Judgment on the Administrative Record. Def.'s Mot.; Def.-Intervenor's Mot. On May 30, 2025, VES filed its Response and Reply. Pl.'s Reply, ECF No. 46. Defendant and AEC filed their replies on June 4, 2025. Def.'s Reply, ECF No. 47; Def.-Intervenor's Reply, ECF No. 48. The parties each filed supplemental briefs on June 27, 2025. Pl.'s Suppl. Brief (hereinafter "Pl.'s Suppl."), ECF No. 55; Def.'s Suppl. Brief (hereinafter "Def.'s Suppl."), ECF No. 54; Def.-Intervenor's Suppl. Brief (hereinafter "Def.-Intervenor's Suppl."), ECF No. 53.

After oral argument on July 16, 2025, Defendant filed a Consent Motion for Voluntary Remand seeking a 45-day remand to OHA and a stay of contract performance pending the remand's outcome. Remand Mot. at 1, 3, 4; *see also* Tr., ECF No. 58. Neither Plaintiff nor Defendant-Intervenor oppose the remand or the stay. Remand Mot. at 1; *see also* Def.'s Suppl. at 5 (noting "contract performance would not be permitted if the OHA determination was remanded for further proceedings"); Pl.'s Suppl. at 10 (requesting a stay pending a final OHA decision on remand); Def.-Intervenor's Suppl. at 1–2 ("By operation of law, contract performance is stayed . . . until a final decision is issued by [OHA].").

### III.  Jurisdiction and Standard of Review

The U.S. Court of Federal Claims has jurisdiction over federal procurement disputes. 28 U.S.C. § 1491(b)(1). Under the Administrative Procedure Act ("APA") standard of review, a bidder protesting an award decision must show the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see* 28 U.S.C. § 1491(b)(4). Stated differently, the Court must determine whether: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted). And "the contracting agency [must have] provided a coherent and reasonable explanation of its exercise of discretion." *Id.* at 1333 (citation omitted).

The Court must also determine whether any claimed "errors in the procurement process significantly prejudiced" the plaintiff. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005). "To establish that it has suffered a prejudicial error in a post-award protest, a plaintiff is 'required to show that there was a "substantial chance" it would have received the contract award but for the [agency's] errors in the bid process.'" *DigiFlight, Inc. v. United States*, 165 Fed. Cl. 588, 597 (2023) (alteration in original) (quoting *Bannum*, 404 F.3d at 1358). This is because "[o]verturning awards on de minimis errors wastes resources and time, and is needlessly disruptive of procurement activities and governmental programs and operations." *Grumman Data Sys. Corp. v. Widnall*, 15 F.3d 1044, 1048 (Fed. Cir. 1994) (citations omitted); *see also Off. Design Grp. v. United States*, 951 F.3d 1366, 1374 (Fed. Cir. 2020). If an agency takes corrective action, any claims regarding the original award decision prior to the corrective action are moot and any errors only in the original award decision cannot prejudice an offeror. *Eskridge Rsch. Corp. v. United States*, 92 Fed. Cl. 88, 94 (2010).

Additionally, challenges to the SBA's OHA decisions fall "within the scope of jurisdiction granted under the Tucker Act because such challenges are actions 'in connection with a proposed procurement.'" *Swift & Staley, Inc. v. United States*, 155 Fed. Cl. 630, 635 (2021) (quoting *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015)). The Court determines whether OHA's findings were arbitrary and capricious or unsupported by substantial evidence. *See, e.g.*, *Veterans Tech., LLC v. United States*, 133 Fed. Cl. 146, 162 (2017) (citing *Princeton Vanguard, LLC v. Frito-Lay North America, Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015)); *Mark Dunning Industries, Inc. v. United States*, 64 Fed. Cl. 374, 380 (2005).

"[T]he APA's 'substantial evidence' standard of review . . . does not apply to informal agency action (e.g., an agency's procurement decisions)." *Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 15 (2022); *see also Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000). But the substantial evidence standard does apply to the review "on the record of an agency hearing provided by statute." 5 U.S.C. § 706(2)(E). And an SDVOSB status protest "shall be heard by the Office of Hearings and Appeals . . . [and] shall be considered final agency action." 15 U.S.C. § 657f(f)(6)(B)(i); *see also* 13 C.F.R. § 134.101 (defining an SBA OHA hearing as "the presentation and consideration of argument and evidence" and explaining a "hearing need not include live testimony or argument"). Thus, the substantial evidence standard applies to the Court's review of OHA decisions. *See Veterans Tech.*, 133 Fed. Cl. at 162 (citation omitted). Proper substantial evidence review "can only take place when the agency explains its decisions with sufficient precision, including the underlying factfindings and the agency's rationale." *Princeton Vanguard*, 786 F.3d at 970 (quoting *Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1357 (Fed. Cir. 2000)).

OHA's decisions are entitled to deference "due to the SBA's quasi-technical administrative expertise and . . . familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme." *Obsidian Sols. Grp. v. United States*, 153 Fed. Cl. 334, 341–42 (2021) (alteration in original) (internal quotation marks and quotation omitted), *aff'd*, 54 F.4th 1371 (Fed. Cir. 2022). "[D]eference is appropriate when the OHA is interpreting the SBA's own rules, which implement a comprehensive regulatory scheme in an intricate manner that a nonexpert court must be careful not to disrupt." *Def. Integrated Sols., LLC v. United States*, 165 Fed. Cl. 352, 371 (2023) (internal quotation marks omitted) (quoting *Darton Innovative Techs., Inc. v. United States*, 153 Fed. Cl. 440, 451 (2021)). However, any agency, including OHA, must still provide enough evidentiary analysis to show "a rational connection between the facts found and the choice made." *In re NuVasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

"[O]nce jurisdiction attaches, the Court of Federal Claims has broad equitable powers to fashion an appropriate remedy." *Turner Constr. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011). "In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2). Remand under the terms of the APA "may not be appropriate when . . . the result of a potential remand is a foregone conclusion." *Thomassee v. United States*, 158 Fed. Cl. 233, 239 (2022) (citing *Diversified Maint. Sys., Inc. v. United States*, 74 Fed. Cl. 122, 127 (2006)). But remand may be appropriate when the Court "cannot reasonably discern whether [the agency] followed a proper path." *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1371–73 (Fed. Cir. 2020). An agency may also request a voluntary remand to "reconsider its previous position," which the Court may grant in its discretion. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).

IV. **Discussion**

Plaintiff brings two separate challenges in this litigation. First, VES alleges the VA acted arbitrarily and capriciously because it improperly waived a material solicitation requirement when evaluating AEC's submission about proposed subcontractors. Pl.'s Mem. at 15–19. Second, Plaintiff challenges OHA's determination that AEC qualified as a SDVOSB when it submitted its bid for this Solicitation in April 2024. *Id.* at 19–27.

VES fails to show the VA erred in evaluating AEC's proposal. However, on this record, the Court cannot determine whether OHA's decision is supported by substantial evidence or lacked a rational basis because the OHA Judge did not adequately explain how the evidence supported his conclusion. Thus, remand to OHA is appropriate. Indeed, Defendant moved for voluntary remand.

### A. The VA Reasonably Evaluated AEC's Proposal Under the Technical Capability Sub-factor on Subcontractors.

VES argues the VA erred in evaluating AEC's proposal because it waived a material solicitation requirement. Pl.'s Mem. at 15. Specifically, VES claims the Solicitation included mandatory minimum requirements under the Technical Capability sub-factor on subcontractors and the VA failed to exclude AEC from eligibility for failing to provide the requested information about its proposed fire alarm subcontractor and proposed QEI. *Id*. at 15–19.

"A solicitation requirement is material when it (1) is express in the solicitation, and (2) serves a substantive purpose." *Superior Optical Labs, Inc. v. United States,* 173 Fed. Cl. 243, 254 (2024) (internal quotation marks omitted) (quoting *DigiFlight, Inc. v. United States*, 150 Fed. Cl. 650, 657 (2020)); *see also MSC Indus. Direct Co., Inc. v. United States*, 140 Fed. Cl. 632, 643 (2018) (citation omitted) ("[O]missions in proposals are material omissions when the excluded information is 'important to the government's evaluation of the offer.'"). And "[w]hether a requirement serves a substantive purpose, . . . is for the agency to decide—not this Court." *Superior Optical Labs*, 173 Fed. Cl. at 254 (citing *WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 273 (2021)). However, "'mandatory minimum requirements' are always—and by definition constitute—material solicitation requirements." *DigiFlight*, 150 Fed. Cl. at 657. And material solicitation requirements can "not be simply waived." *MSC Indus.*, 140 Fed. Cl. at 644. Here, the list of requested information under the subcontractor sub-factor was *not* a material requirement, and thus, the VA did not waive a material requirement.

The criteria and submission requirements under the subcontractor sub-factor instructed an offeror to list "subcontractors intended for use on the project" and provide a variety of information about these subcontractors. Tab 35 at AR 1644. And while other Technical Capability sub-factors explicitly noted where an offeror "shall provide" information, the term "shall" was notably absent from the instruction to provide the requested information about subcontractors. *See id.* at AR 1643–44. Rather, the requirements were clear the subcontractor information would "be *evaluated* to ensure qualifications meet any minimum qualification requirements outlined in the Specifications, as well as to gauge the overall suitability of the subcontractor to the work being performed." *Id*. at AR 1644 (emphasis added). And the

11

Solicitation stated "[t]he offeror shall review the Specifications to determine all qualifications requirements." *Id*.

Thus, the Solicitation expressly informed offerors the VA would subjectively consider whether the provided information increased or decreased the VA's confidence the offeror would successfully perform the contract. Critically, the VA wanted assurance any subcontractors were suited to perform the work outlined in the Solicitation. If the VA determined a proposal did not assure it that any proposed subcontractors could successfully perform the necessary work, it would deem a proposal "Unacceptable" for failing to meet the Solicitation's requirements. *Id*. at AR 1643.

The VA properly considered and evaluated AEC's submission under the subcontractor sub-factor. The VA determined AEC "does not need any subcontractors" because AEC only noted the need for a fire alarm programming subcontractor and the VA already has a proprietary fire alarm system. *Id*. at AR 1649; *see also* Tab 5b at AR 158. The VA also acknowledged under the Project Management Plan sub-factor that AEC mentioned the use of its own QEI, but "the solicitation states that the contractor is not responsible for the QEI." Tab 35 at AR 1650. The VA noted this aspect of AEC's proposal as a weakness because it was "a flaw in the proposal," but it did not rise "to an unacceptable level." *Id.* at AR 1642, AR 1650. Thus, the VA properly weighed AEC's proposal against the Solicitation's requirements and did not err in finding AEC eligible.

Since Attachment A to the Solicitation obviated the need for offerors to provide fire alarm programming or a QEI, missing information in AEC's proposal about subcontractors related to those tasks is inherently trivial. *See* Tab 5b at AR 158, AR 178; *see also* Tr. at 34. "Although it may be true that 'a proposal which ultimately fails to conform to material terms of the solicitation should be considered unacceptable,' '[w]here a defect in a bid is trivial or a mere formality, not material, the bid is not required to be rejected out of hand.'" *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (quoting *M.W. Kellogg Co./Siciliana Appalti Costruzioni v. United States*, 10 Cl. Ct. 17, 26 (1986)). Since AEC's proposal stated it would provide subcontractors for these tasks even though the Solicitation did not require them, the VA appropriately considered whether this information impacted AEC's understanding of the Solicitation and its likely success. *See* Tab 35 at AR 1649–50. The VA reasonably found these unnecessary elements were irrelevant and a weakness, respectively, rather than material deficiencies that would render AEC incapable of successfully performing the Solicitation's requirements. *Id.*

Defendant correctly notes the VA would have applied unstated evaluation criteria if it *had* eliminated AEC from award consideration for failing to provide information about these two proposed subcontractors. Def.'s Mot. at 24–25. The VA was required to evaluate proposals and make its award decision "based on the criteria stated in the solicitation and [could] not rely upon undisclosed evaluation criteria in evaluating proposals." *Frawner Corp. v. United States*, 161 Fed. Cl. 420, 443 (2022) (quotation marks and citation omitted). An agency acts arbitrarily if it uses "a significantly different basis in evaluating the proposals than was disclosed." *Samsara Inc. v. United States*, 169 Fed. Cl. 311, 319 (2024) (quoting *Wellpoint Mil. Care Corp. v. United*

*States*, 144 Fed. Cl. 392, 404 (2019), *aff'd*, 953 F.3d 1373 (Fed. Cir. 2020)). This includes penalizing an offeror for failing to provide information the Solicitation did not require. *Id.* at 320. Thus, it would have been improper for the VA to exclude AEC for failing to provide information identifying the fire alarm programming contractor or the QEI since the Solicitation did not require them.

Moreover, VES itself did not provide all the information requested under the subcontractor sub-factor. It failed to provide an address for its electrical subcontractor—an entity that *would* perform tasks the Solicitation expressly required. *See* Tab 5a at AR 33, AR 39 (instructing offerors to provide a subcontractor's "entity name and address"); Tab 31a at AR 1468–69; Tab 35 at AR 1649. So when preparing its offer, VES must have assumed including all the requested information was not a material requirement. Indeed, the VA noted a weakness in VES' proposal for failing to provide the subcontractor's address rather than deeming VES ineligible. Tab 35 at AR 1649. And the VA also penalized VES for mentioning "the use of an in-house QEI," even though the Solicitation "states the contractor is not responsible for the QEI." *Id.* at AR 1650. Yet in this bid protest, Plaintiff argues the VA should have excluded AEC's proposal for the same alleged deficiencies. Pl.'s Mem. at 19. It would undermine "the integrity of the protest process" if the Court permitted a protestor to take one "position during the procurement, and then argue during a protest that the interpretation or position is unreasonable or otherwise improper." *AccelGov, LLC v. United States*, 174 Fed Cl. 212, 229 (2024) (quoting *Sys. Implementers, Inc. v. United States*, 162 Fed. Cl. 754, 767 (2022)).

VES attempts to sidestep this flaw in its reasoning by contending its omission "was not as egregious as" AEC's deficiency and "VES would not necessarily suffer the same fate as AEC for omitting subcontractor information." Pl.'s Reply at 25. But it is the VA, not VES, that determines whether an offeror has complied with the Solicitation's terms. *See Integrated Fin. & Acct. Sols., LLC v. United States*, 161 Fed. Cl. 475, 490 (2022) (quoting *Software Eng'g Servs., Corp. v. United States*, 85 Fed. Cl. 547, 554 (2009)) (rejecting an offeror's "mere disagreement with the agency's judgment"). *See also* Tr. at 14–15. "[A]n agency . . . has 'great discretion in determining the scope of an evaluation factor.'" *NEQ, LLC v. United States*, 88 Fed. Cl. 38, 48 (2009) (quoting *Forestry Survs. & Data v. United States*, 44 Fed. Cl. 493, 499 (1999)). Thus, there is no merit to Plaintiff's position.

VES wants AEC's award thrown out on an inconsequential technicality. But the record shows the VA found AEC's proposal superior to VES' offer, awarding AEC an overall rating of "Good" as compared to VES' rating of "Acceptable." Tab 35 at AR 1651. The VA's evaluation of AEC's proposal was not arbitrary and capricious. The VA appropriately determined AEC was eligible, and more qualified, to perform the contract.

### B. The Court Remands to OHA for an Adequate Explanation of Its Conclusion Based on the Record Evidence.

VES contends OHA erred in concluding AEC was eligible for the award as an SDVOSB. Pl.'s Mem. at 19. The Court reviews whether OHA's determination was arbitrary and capricious or unsupported by substantial evidence. *Veterans Tech.*, 133 Fed. Cl. at 162 (citing *Princeton*

13

*Vanguard*, 786 F.3d at 970). An agency's finding was arbitrary and capricious if it ran "counter to the evidence" or "lacked a rational basis." *See Centerra Grp., LLC v. United States*, 138 Fed. Cl. 407, 412–13 (2018) (citing *Ala. Aircraft Indus., Inc.–Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009)); *Impresa*, 238 F.3d at 1332. Its decision was not supported by substantial evidence if it did not conduct "an examination of the record as a whole, taking into account both the evidence that justifies and detracts from the agency's opinion." *Princeton Vanguard*, 786 F.3d at 970 (quoting *Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006)).

Defendant-Intervenor conceded at oral argument it was unclear from OHA's decision whether the OHA Judge reviewed the underlying evidence or merely relied on AEC's response. Tr. at 62–65 (stating there was no "citation of the evidence," which is "a problem" under "any APA style review," and it is "unclear whether OHA is simply reciting the protest response itself or is [] making a judgment call on the evidence that was submitted along with that response"). And Defendant agreed the evidence the parties submitted was "not specifically noted in the [OHA Judge's] order." *Id*. at 60. Following oral argument, Defendant filed a Consent Motion for Voluntary Remand to OHA so it can consider all the evidence submitted in the case to determine AEC's SDVOSB eligibility as of April 29, 2024. *See* Remand Mot. at 1, 4. For the reasons below, Defendant's Motion is granted. OHA shall reconsider its decision consistent with this Opinion.

OHA's review process ensures an SBA-certified and registered SDVOSB is still eligible at the time it submitted its bid. 13 C.F.R. §§ 134.1001(a), 134.1003(e)(1). Thus, the OHA Judge needed to inquire beyond the evidence used to grant AEC its SDVOSB status in 2023. *Id*. § 134.1003(e)(1); *see also* Tab 27.2 at AR 1251. At issue was whether AEC *still* met the requirements to qualify on April 29, 2024. *See Superior Optical Labs, Inc. v. United States*, 158 Fed. Cl. 262, 277 (2022) (finding OHA had to determine whether an SDVOSB was "fully controlled by a service-disabled veteran . . . as of the date it submitted its offer"). The burden of proof was on AEC to "prov[e] its eligibility, by a preponderance of the evidence." *Id*. § 134.1010. Accordingly, in responding to VES' status protest before OHA, AEC provided evidence to prove SDVOSB eligibility as of April 29, 2024. Tab 20.2.

The OHA Judge had broad discretion to weigh evidence, including whether to credit hearsay testimony. *Id*. § 134.223(a)–(b) ("[T]he Federal Rules of Evidence will be used as a general guide in all cases before OHA . . . . Hearsay evidence is admissible if it is deemed by the Judge to be relevant and reliable. Weight to be afforded hearsay evidence is at the discretion of the Judge."). While an OHA judge "will give greater weight to specific, signed, factual evidence than to general, unsupported allegations or opinions," the regulations do not expressly preclude a judge from crediting unsupported opinions. *Id*. § 134.1011. But the OHA Judge's decision needed to be based "on the case file and information provided by the protestor, the protested concern, and any other parties." *Id*. § 134.1007(g); *see also* Def.'s Suppl. at 4 ("Because OHA was required to consider AEC's eligibility as of the date of the offer including price—April 29, 2024, OHA could not only rely upon the case file.").

AEC included with its response a signed statement from Mr. Armstrong, on behalf of AEC, attesting to the veracity of the response. Tab 20.2 at AR 715. VES argues Mr.

14

Armstrong's signed statement is not evidence because it is not an affidavit. Pl's Mot. at 21–22. Defendant and Defendant-Intervenor claim this is a distinction without a difference since Mr. Armstrong provided the sworn statement under penalty of perjury and an OHA judge "will give greater weight to specific, *signed*, factual evidence." Def.'s Reply at 5 (citing 13 C.F.R. § 134.1010); *see also* Def-Intervenor's Reply at 6.

OHA regulations state "[e]very written submission to OHA, *other than evidence*, must be signed by the party filing that submission, or by the party's attorney. By signing the submission, a party or its attorney attests that the statements and allegations in that submission are true to the best of its knowledge." 13 C.F.R. § 134.209 (emphasis added). Accordingly, Mr. Armstrong's signature on behalf of AEC served the formal purpose of validating AEC's response, but it is not clear whether the signed statement constituted evidence in support of the response. *See Square One Armoring Servs. Co. v. United States*, 162 Fed. Cl. 331, 342 (2022) (citing *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006)) (finding arguments submitted in legal cases, on their own, do not constitute evidence). And the OHA Judge did not indicate why he determined the signature turned AEC's response into evidence. More importantly, he did not explain why this piece of evidence was more convincing than any of the other evidence the parties submitted in the status protest. If, on remand, the OHA Judge again considers Mr. Armstrong's signed statement as evidence, he must clarify his reasoning for doing so and weigh the statement against the other evidence submitted in the status protest.

Other than the VA's 2023 disability letter, the OHA Judge did not say whether he relied upon or found credible the third-party affidavits or any other evidence AEC submitted in support of its response to the status protest. *See* Tab 27.2; *see also* Tabs 20a–20h. Nor did he mention or evaluate any of the seventeen exhibits VES submitted. *See* Tab 27.2. The OHA decision only referred to the 2022 case file and Mr. Armstrong's sworn statement on behalf of AEC attesting to the truth of AEC's response. *Id*. at AR 1252–53. But the decision should have been "based on the case file and information provided by the protestor, the protested concern, and any other parties." 13 C.F.R. § 134.1007(g).

AEC's response cited to the affidavits and other evidence it submitted, *see* Tab 20.2, but this Court cannot discern whether or how the OHA Judge weighed that evidence because he did not mention it. The OHA Judge merely summarized AEC's arguments without analyzing the evidence. *See* Tab 27.2 at AR 1248–50. Moreover, while the OHA Judge held that he "must examine AEC's SDVOSB eligibility as of [April 29, 2024]," neither his analysis nor conclusion addressed whether AEC satisfied its burden to show eligibility *on that date* or how the evidence AEC submitted from 2024 supported such a finding. *Id*. at AR 1252–53.

In a summary of VES' petition, the OHA Judge also acknowledged VES questioned the credibility and sufficiency of AEC's evidence, specifically that "AEC has submitted no direct evidence that Mr. Armstrong works for AEC during regular business hours." *See* Tab 27.2 at AR 1250. VES develops this argument in its briefing before this Court, claiming OHA failed to consider that AEC employee Linda Barrows may exert control over AEC's operations, and AEC's tax records indicate Mr. Armstrong's devotion to AEC fluctuated over the years. Pl.'s Mem. at 8–10, 22–26. VES also asserts unfavorable information about Mr. Armstrong's

15

involvement in Potcake Cellars was removed from the business' website. *Id*. at 25–26. And Plaintiff contends OHA failed to hold AEC to its burden to prove SDVOSB eligibility. *See* Tr. at 43; *see also* Pl.'s Mem. at 23 (contending Defendant-Intervenor "never reestablished AEC's operating hours or the time Mr. Armstrong dedicated to AEC at the time AEC submitted its proposal on April 29, 2024. AEC's operating hours could have changed since 2021 and Mr. Armstrong's dedication to AEC during this time period could have also shifted."). Although the OHA Judge did not need to address every issue VES raised, he was obligated to explain why the evidence AEC submitted refuted VES' evidence and arguments Mr. Armstrong did not adequately control AEC in April 2024. Tab 27.2 at AR 1252–53.

Further, the OHA Judge correctly noted the SBA eliminated the "presumption that a service-disabled veteran does not control a concern if that individual is not located within a reasonable commute to firm's headquarters." *Id*. at AR 1253. But he did not explain why, based on the evidence, Mr. Armstrong's proximity to AEC's headquarters was "immaterial to the outcome of this case." *Id*.

This Court defers to OHA on factual findings within its technical expertise, but OHA must show "a rational connection between the facts found and the choice made." *See LS3, LLC v. United States*, 168 Fed. Cl. 722, 731 (2023) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). The OHA decision summarily states "AEC has proven its eligibility as an SDVOSB by a preponderance of the evidence and has persuasively shown that Mr. Armstrong devotes full-time to AEC without conflicting outside employment or other commitments." Tab 27.2 at AR 1253. Although the OHA Judge recited AEC's preponderance of the evidence burden, he did not "explain why the evidence in the record was sufficient." *Stratton v. Sec'y of Health & Hum. Servs.*, 138 F.4th 1368, 1372 (Fed. Cir. 2025). Such "[a] naked conclusion and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing is inimical to a rational system of administrative determination and ultimately inadequate." *Id*. (alteration in original) (quoting *Istivan v. United States*, 231 Ct. Cl. 671, 676 (1982)). While APA review "is deferential, that 'does not relieve the agency of its obligation to develop an evidentiary basis for its findings.'" *Alacritech*, 966 F.3d at 1372 (quoting *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019)).

OHA acted contrary to its regulatory obligations if it did not evaluate the evidence the parties submitted to determine AEC's SDVOSB eligibility as of April 29, 2024. *See* 13 C.F.R. § 134.1007(g). Based on the record, the Court cannot determine if OHA conducted "an examination of the record as a whole, taking into account both the evidence that justifies and detracts from [OHA]'s opinion." *Princeton Vanguard*, 786 F.3d at 970 (citation omitted). It is not clear whether the OHA Judge merely took AEC's arguments at face value or whether he delved into the evidence submitted by VES and AEC to determine the truth of AEC's assertions.

Defendant and Defendant-Intervenor contend AEC did submit several pieces of evidence, including affidavits, that support OHA's findings. Def.'s Mot. at 16–17; Def-Intervenor's Mot. at 20–21 (providing a chart that lined up evidence with the conclusions). But these arguments merely illustrate what OHA *could have* done to base its conclusions on the evidence, not what it actually did. The OHA Judge "failed to address" any of the "relevant evidence" that could have

answered the key question regarding AEC's eligibility in April 2024. *ELB Services, LLC v. United States*, 172 Fed. Cl. 233, 249 (2024). And he did not provide "a coherent and reasonable explanation of [his] exercise of discretion." *Precise Systems, Inc. v. United States*, 120 Fed. Cl. 586, 603 (2015) (quoting *Impresa*, 238 F.3d at 1333). The Court cannot conduct substantial evidence review unless an agency explains "its decisions with sufficient precision, including the underlying factfindings and the agency's rationale." *Princeton Vanguard*, 786 F.3d at 970 (citation omitted).

VES also claims the OHA Judge erred because he did not exercise his discretion to request additional information from AEC given the purported inconsistencies VES highlights in the record evidence. Pl.'s Mem. at 24 (citing 13 C.F.R. § 134.1007(g)). But there was no requirement that he do so. *See* 13 C.F.R. § 134.1007(g); *see also* Tr. at 44 (Plaintiff admitting the OHA Judge was not required to request additional evidence). However, the OHA Judge did need to consider the evidence submitted by both sides and determine whether it was sufficient to find AEC eligible. 13 C.F.R. § 134.1007(g). If on remand OHA determines the evidence is insufficient, it may still request additional information from the parties or the SBA. *Id*.

Since the Court cannot conclude on this record whether OHA's decision was supported by substantial evidence, lacked a rational basis, or involved a regulatory violation, it is appropriate to remand for further consideration. *See ELB Services*, 172 Fed. Cl. at 250; *Precise Systems*, 120 Fed. Cl. at 603; *see also* Remand Mot. at 4–5 (contending "remand is in the interests of judicial economy because it would also serve the Court's—and the parties'—interest in resolving this matter in a just, speedy, and inexpensive manner"). Congress empowered OHA to make final determinations in SDVOSB status protests. 15 U.S.C. § 657f(f)(6)(B)(i). In doing so, OHA must "apply the appropriate standard to the relevant evidence in the record and articulate a rational basis for its decision in the first instance." *ELB Services,* 172 Fed. Cl. at 250; *see also* 13 C.F.R. § 134.1007(g). And because VES has raised concerns about the credibility and sufficiency of the evidence AEC submitted—issues within OHA's mandate to evaluate—the result on remand is not "a foregone conclusion." *Thomassee*, 158 Fed. Cl. at 239. *See also* Tr. at 74 (confirming it would "defeat the purpose of a remand" if OHA was required to reach the same outcome). "It may be that [OHA] can provide a reasonable explanation for its decision[,] . . . [b]ut it has not yet done so." *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1380 (Fed. Cir. 2001).

On remand, regardless of the outcome, OHA "shall set forth its rationale for the decision with greater clarity." *Precise Systems*, 120 Fed. Cl. at 603. In line with its regulatory obligations, OHA must evaluate and consider the evidence VES and AEC submitted in the status protest. 13 C.F.R. § 134.1007(g).

## V.     Conclusion

Accordingly, Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 38, is **GRANTED-in-PART** and **DENIED-in-PART**. Defendant's and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record, ECF Nos. 42 & 43, are

17

**GRANTED-in-PART** and **DENIED-in-PART**.  Defendant's Consent Motion for Voluntary Remand, ECF No. 59, is **GRANTED**.

Pursuant to Rule 52.2 of the Rules of the Court of Federal Claims, the case **SHALL BE REMANDED** to OHA with instructions to reevaluate AEC's SDVOSB eligibility as of the date it submitted its bid on April 29, 2024, consistent with 13 C.F.R. § 134.1003(e).  OHA shall, in line with 13 C.F.R. § 134.1007(g), base its determination on an examination of all the evidence submitted and explain how the evidence supports its findings and conclusion.  OHA must complete its reevaluation within **45 days**.  Notwithstanding Rule 52.2(b)(2), counsel of record for the United States **SHALL** provide a copy of this order to OHA, which will constitute service pursuant to that rule.

This case is **STAYED** for the duration of the remand.  As Defendant requested, the parties shall file a Joint Status Report within **three business days** of the remand proceedings' conclusion setting forth the parties' positions regarding whether further litigation of this matter is necessary.  If so, the parties shall include a proposed schedule to govern this case going forward.

**IT IS SO ORDERED.**

  s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge